We can proceed to the next case so I'll call the case of Ricardo Vega versus the Secretary of the Department of Corrections. Hi, sorry about that. All sorts of things going on here. We're glad to see you and you may proceed if you're ready. Your Honor, would you like me to get started then? Yes. All right. May it please the court, Darlene Bearer on behalf of Ricardo Vega. Mr. Vega filed an initial brief on a pro se basis and this court had asked me to address two questions with regards to this case. The first question was whether the state habeas court's rejection of Mr. Vega's ineffective assistance of counsel claim rested on its deficient performance prong, its prejudice prong or both. And it is our position after reviewing the record that it rested on the deficient performance prong. Secondly, this court asked us to brief whether the state habeas corpus court reasonably concluded that counsel was ineffective because the state introduced sufficient evidence to convict Mr. Vega of robbery with a deadly weapon. And our conclusion is that the state court did not conclude that properly. And I will go on into an explanation of why this is our position. It was very interesting to me when I read the transcript of the trial that while everyone seemed aware of the fact that Mr. Vega allegedly committed this robbery with a BB gun, that the jury was never informed of that position. It is clear from the charging documents and from the court's handling of the case before and after the jury trial that the state, the defense, and the court was well aware that the deadly weapon in this case was a BB gun. When this case came before the jury in 2007, it was already well established that a BB gun could be a deadly weapon. Where in the record do you say that it was, everyone was well aware that the gun was a BB gun? Where is that in the record? Yes. Several of the places where that is in the record is document 14-H, page 8, and also document 14-E. I have in front of me the state court's habeas explanation in which the state court discusses the fact that it is a BB gun. And additionally, in 14-G, the pleading says the only reason the defendant was not charged with robbery with a firearm is because he was caught with a BB gun replica of a semi-automatic pistol when committing a home invasion robbery three days later. Therefore, the prosecutor gave the defendant the benefit of the doubt and assumed that he had used the same replica in this robbery. Are you citing, I'm going to look at these citations, but are you citing pleadings and things like that? I guess I'm just, I read the trial transcript and I just didn't see anywhere where anybody said that it was a BB gun at all. And the defendant, I think, testified and didn't say it was a BB gun. He did, your honor, and you're absolutely right. And that was the most striking thing to me was that a defense counsel chose not to inquire of the state witnesses or to establish anything that then could have been argued in a judgment of acquittal. That wasn't the defense. In other words, the defense was, it wasn't me, you got the wrong guy. That is correct, your honor. It's not effective to say, it's not me, but by the way, if it was, I didn't really have a gun. Well, your honor, I think that trial counsel could have argued it in the alternative. My client's position is that it was not me. However, if the jury believes that there was evidence that it was me, then it was not committed. This robbery was not committed with a deadly weapon. Well, let me ask you this. So the question before us, and I agree with Judge Brasher, this case was interestingly tried is the best way that I could say it, from the state side especially. But it was tried the way it was, and so we have what we have. And the question for us is, was it unreasonable for the district court to find that it would have been completely ineffective, that no reasonable counsel would have not made the argument or would have made the argument about this being a gun? And so for me, I look to Daley or Dale, which is the 1997 case from the Florida Supreme Court. And Dale is specific that the issue posed was one very narrow one. The issue posed here, I'm quoting from the case, this is at page 1047 of the case. The issue posed here is whether the deadliness of a BB gun is properly a jury question or whether a BB gun is so innocuous that it is always a non-deadly weapon as a matter of law. We agree with the district court and hold that whether a BB or pellet gun is a deadly weapon, and then it defines deadly weapon, is a factual question to be answered by the jury in each case. So if that's the state of the law, how could it be unreasonable for the state court in the state of the law to say that it was so unreasonable for a trial counsel to read that and say, it's a jury question. There's evidence that he had something that looked like a gun. He pointed it at people. He showed it to everyone. People responded to it as if it was a gun, that people mistook this as a deadly weapon. I don't understand how a trial counsel could have been completely unreasonable and that it would be unreasonable for a state court to make that determination based on that state of the law. Yes, Your Honor. Well, the evidence as to whether it is a deadly, a BB gun is a deadly weapon or not needs to be supported by competent substantial evidence. In this case, as the trial transcript indicates, there are two things that were utilized to establish this competent substantial evidence. One is that the victim says that she believes that the perpetrator had a gun. And secondly, there was an officer who was not in the restaurant, but he was outside 25 to 30 feet, who said that he was, that he had seen the defendant with a gun. Counsel, while you're just describing that evidence, it's not just that the waitress or the employee of the restaurant said that she thought it looked like a gun. It's that, it's that your client is, is the evidence showed that he took it out. He pointed it at her. He pointed at other patrons, patrons got on the floor. He pointed the gun at the cash register and the guy at the register or the gal at the And that was observed by not just the waitress, but by the officer. So it's not just what they saw, but the, the, what happened with other people who saw the same firearm or the same, the same gun looking device. The only two witnesses at the trial were the, the waitress and the officer that was outside. Right. Um, and now in, in the, neither one of them identified it as a BB gun. I mean, the jury never heard that it was a BB gun, correct? That is, that is correct. And in, in the Dale case, uh, that jury had an opportunity to view the weapon firsthand. In this case. But that's the thing. But first of all, the issue in Dale, the question in Dale was simply, is this a jury question or is this a question as a matter of law? And the court decided it's a jury question. It then went on to say of key importance in that particular case was that the jury was able to view it. But it didn't say that issue was dispositive, did it? At no point did Dale say that without that, no jury could reasonably or competently find that something is a BB gun, right? That is correct. Your honor. However, in that BB gun, the jury had, uh, an opportunity to view the BB gun. In addition to that, the investigator showed the jury how the gun was operated. And, um, so there was, the jury had some firsthand opportunity to determine competent and substantial evidence as to whether they believe that this was a deadly weapon or not. In our case, the jury never knew that it was a BB gun. They never saw a weapon. And so they did not have an opportunity to review whether it was competent and substantial evidence. Do you agree with me? I'm sorry, Judge Brasher, go ahead. Well, I'm just going to say, I mean, so can't you prosecute someone under this provision of Florida law without introducing the weapon that they used into evidence? I mean, haven't the Florida court said that? So if he had taken, he had, I mean, I don't, I still don't know that he actually used a BB gun, but, um, he used some kind of device and then he wasn't arrested until several days later. Let's say he just destroyed the device and it was never found. Couldn't he still be prosecuted under the statute as long as their head was eyewitness testimony that he used a gun like this? There would have to be competent and substantial evidence that whatever weapon he used was able to inflict great bodily harm. And we don't know that in this case, because that was never part of the evidence. Well, but I guess my point is it's not necessary and correct me if I'm wrong, but I thought that Florida law was that it's not necessary to actually introduce the physical weapon. You can have eyewitness testimony like we have here where that said, you know, I was threatened with this weapon. It was a gun and I gave him all my money and I was really scared that that, that that would be sufficient evidence without actually having the physical weapon. You're correct. Your honor, you do not have to have the weapon itself. There just has to be competent, substantial evidence that the weapon is capable of inflicting great bodily harm. The point is like what, what kind of representation did Mr. Vega have and, and, you know, is the fact that when there was no proof offered by the government that there was a BB gun or a replica of a semi-automatic weapon, was it incumbent upon Mr. Vega's trial counsel to make a motion saying the government's failed to prove it was a deadly weapon and, and counsel failed to do that. And so we're faced with the analysis of, of whether that was deficient performance and whether it prejudiced Mr. Vega under Ed Poverty, right? So how they tried the case is really not what we're here about. That is absolutely the correct analysis, your honor. And the prejudicial factor is he was sentenced to life, which he could have been. And if it had not been a deadly weapon, he would have received a maximum of 30 years. He's a young person. So it made a difference. Thank you. May it please the court. My name is Bonnie Parrish. I represent the appellee, the secretary, Florida department of corrections. As this court has pointed out, there was no evidence presented in this case that this was a BB gun, none whatsoever. The victim testified that he pointed a gun at her, demanded money. She thought it was a real gun. The deputy who was watching from the parking lot, he believed it was a real gun. There is nothing in this case, while he was arrested three days later with a BB gun, that doesn't mean that's the same gun that he used during this robbery. There's nothing to show that. He was charged with three counts. The robbery he was charged with violating section 812.132A, which is specifically if in the course of committing the robbery, the offender carried a firearm or other deadly weapon. The jury was instructed on what a firearm was, what a deadly weapon was. There was no evidence to show that a BB gun was used in this case. Had the attorney argued in her JOA that the state didn't prove it was a deadly weapon, the motion would have been denied. There was no evidence to support making such an argument. The defendant testified. He testified he was someplace else. He didn't have a car. The restaurant was too far away to walk to. He did not testify that he used a BB gun that couldn't have hurt a fly. No evidence was presented at trial that the weapon used in this case was a BB gun. Based on that fact, the ruling of the state court was not contrary to or an unreasonable application of Strickland, and the denial of that claim by the district court judge was proper. Ms. Parrish, I think you're playing a very dangerous game right now, and I'll explain to you why I think that's the case. This was charged very clearly as robbery with a deadly weapon, rather than robbery with a firearm, correct? It was, yes. The information charged with a deadly weapon. Right. And you know that that is divisible, both as a matter of Florida and federal law, on if you charge robbery with a firearm different than robbery with a deadly weapon. In other words, that's a defined choice because they are mutually exclusive things under Florida law, correct? That's not correct, no. A firearm can be a deadly weapon. A firearm can be a deadly weapon under Florida law? Yes, sir. What's a weapon under Florida law? Oh, I don't have that written down, but a deadly weapon is one that's used or threatened to be used. A firearm is any weapon- Counsel, I know what deadly weapon says. What is weapon under Florida law? I apologize. I don't have that written down. Trust me when I tell you that it's lots of dangerous things explicitly defined as other than a firearm. Okay. So, a deadly weapon cannot be a firearm under Florida law. It's a deadly form of a weapon, one that can cause deadliness, but it is not. And it's why the statute has a category for deadly weapons and has a category for firearms, right? Correct. Right. Okay. So, this was charged as a deadly weapon. The jury was instructed, because I went back to the instructions, that only as to this enhancement that it had to be a deadly weapon, not as a firearm. And that's different from other enhancements that the jury was instructed on, where they were instructed as an alternative for firearm. Let's go back to the jury instructions. I mean, my recollection of the jury instructions is they were instructed on what a firearm was? Absolutely were. They were given the definition of firearm. But with regard to this issue, in other words, the enhancement here is, as you know, Florida has, the crime in Florida is robbery. And robbery, I think it's second degree without anything else. The enhancement increases it to first degree or first degree PBL, depending upon what the enhancement is. Correct. So, right. So, here, the jury was instructed, if you find that the defendant carried a deadly weapon described in charge in the court, in the charge, in the course of committing the robbery, and that deadly weapon described in charge was a deadly weapon, you should find the defendant guilty of robbery with a deadly weapon. But as to that enhancement, the jury was not instructed with regard to a firearm. I'm trying to find them right now to look at it. That is not my recollection. Not that I not that I'm disputing what you're saying is in the record. Take a look at document entry 14-4 at page 17 on CMECF. But let's let's go even further. The verdict form, which is 14-4, docket entry 33, or page 33, it says we the jury find the defendant guilty of robbery with a deadly weapon as charged. As charged. That's correct. It's not a firearm. So if you are telling us that the only evidence was that this was a firearm, and he was not And a deadly weapon in Florida, again, just assume I'm right for the moment, a deadly weapon in Florida cannot be a firearm, then you have a problem, don't you? Well, I would disagree with that, Your Honor, the issue in this case is that was raised is whether the trial counsel was ineffective for failing to move for a judgment of acquittal on the basis that the state failed to prove that the BB gun was a deadly weapon. So if that's the issue, right, I agree with you completely. So let's go back to what the real issue here is, which is that the state as the as the post conviction court said, the state attorney, because he was found with a BB gun three days later, just wasn't sure. And so as a matter of caution, charged him with a deadly weapon, as opposed to with a firearm, because they didn't have a firearm, and they didn't know it was a firearm. And so they presented this to the jury as a deadly weapon case, not a firearm case, because as you know, it's a first degree PBL one way or the other. Correct. So, so they presented their case, they said gave the evidence there. And the only question that we have, and I'll go back, I think Judge Martin said it exactly right at the end of the state's presentation, or at the end of Mr. Vegas presentation, which is the only question for us is whether under a deep a deference, trial counsel was ineffective for failing to move for a jo way on whether this was this, this, whatever he had, whatever device he had, was a deadly weapon or not. And so I want your if frame does that way, if you can make your argument for me, that would be very helpful. Okay. The the evidence in this case, the under Florida law, a jury can determine it's a jury question whether the weapon used is a deadly weapon, based on how the weapon in this case was used. It was a juror, it was a question of fact for the jury, it would not have been could not be resolved on a jo way, which your best case in a BB gun sort of case, what's your best case for the fact that pointing a gun at someone showing it to the person using it as if it were a gun is sufficient evidence in itself. To prove a deadly, deadly weapon. Thank you. Right. Um, I mean, there's, there's quite a few good ones. Um, Gardner, Austin, one second, sorry, counsel, the problem with Gardner, as your opposing counsel says is, that's a 2015 or 2014 case, which 2013 2013, which wouldn't have been available in 2017, when the jo a motion was made. Now, I think it doesn't form the prejudice analysis, but I'm not sure that it informs the deficiency analysis. I could be wrong about that. But it certainly doesn't inform the deficiency analysis. So what in 2017, or before is your best case, or 20 2007, and before Mitchell young, Austin bass. So let's talk about Mitchell, because Mitchell, I think, is a very interesting case. Mitchell says it has a situation where it's actually a very sad situation, an ex husband, or a separated husband goes to the new home of his estranged wife, who's now with another man, he's angry, he goes in, he points a BB gun, it actually is a BB gun there, he points it at them, threatens them, and they believe that this, this is a real gun, and they're going to be killed, and gets money and robs them. And I think it's over the head, the person he's charged with, just like here, robbery with a deadly weapon. And the court there says in its holding, when a defendant's words or actions imply that a device is dangerous or deadly, and the device is normally dangerous or deadly when used in an ordinary and usual manner, which a BB gun could be or would be, but at the time of the offense is not dangerous or deadly due to a condition that cannot be observed by the victim, we conclude that a jury may find the device to be dangerous or deadly weapon. In other words, even if a BB gun, which ordinarily could be dangerous, is not dangerous at that moment, as long as the defendant's words or actions imply that a device is dangerous or deadly, the jury may find the device to be a dangerous or deadly weapon. Um, using that case, if that's the standard of the law in 1997, there, would a would a counsel act unreasonably for not filing a J away, given the evidence here? No, they would not not in this case. He entered the restaurant, he pointed the gun, he pulled the gun out pointed at the victim demanded money, other people laid on the ground, everybody was in fear when he used a BB gun, whatever it was, he put everybody in fear that he was going to use that weapon. And I looked at this case is more of a prejudice prong case. What would have happened? I mean, I think your argument goes to this, but what would have happened had counsel made a J o a on this ground after the state's presentation? I think I think the motion would have been denied because there was there was no other evidence than what the victim and the deputy testified to. No other evidence for it to go to the jury under Florida law, right? Exactly. It's a it was a question for the jury to decide. Does it matter? But that again, I'm sorry, Judge pressure. Go ahead. I was just gonna say, does it matter to your argument whether the state court resolve this on deficient performance or prejudice? I know you say that both prongs were addressed. The other side said it was just deficient performance. Does it really matter one way or the other? No, sir, it doesn't. You have to they have to prove both. So either either one, both no, it makes no difference. My question just went to the fact you continue to say, well, this was all the evidence they had. But I don't understand that argument because the burden is on the state to prove that it was a deadly weapon. And so an insufficiency of evidence doesn't seem to be an argument in your favor. Well, I don't think the evidence was insufficient in this case, but the evidence was sufficient for it to become a jury question for the jury to decide whether he used a deadly weapon. So we also, as you know, have to look at whether the state courts made unreasonable findings of fact. Right. Right. So can I turn your attention to the state post-conviction trial court ruling? You know, I guess it's I don't know the CDCF number, but it's page nine of that order. In one paragraph, the judge seems to acknowledge that, you know, there was a BB gun or Mr. Vega was found with a BB gun, quote, replica of a semi-automatic pistol. And then in the very next breath says, but there was sufficient evidence to find a deadly weapon. I don't. How is that consistent? Well, that came out of from the sentencing hearing. The prosecutor made a statement about it being a BB gun, basically that they weren't pursuing the 10-20 life because there was no weapon. That's where that comes from is out of the at the sentencing, sentencing hearing. And the prosecutor, that's what they put in their response. The judge just, I think, copied and put it in there. But that that's what it is. It has nothing to do with the trial. Nothing. He'd already been found guilty when that was when that was statement was made. Can we just talk about I thought this was really interesting. The specific claim that was made in this case, because it seems like one claim that you could make if you wanted to, if you were petitioning for post-conviction review would be that the lawyer chose the wrong strategy and that the lawyer shouldn't have used a strategy of putting his client up to testify that he wasn't even there, that the lawyer should have put his client to testify that he used a BB gun, et cetera. But that's not the claim that was made here. The claim that's made here in the post-conviction petition in ground five is just counsel was ineffective in failing to move for judgment of acquittal when the state failed to introduce the pistol into evidence. That's the that's the ground in ground five. So we're not really the question before us, I guess, and I want your comment on this. It seems like the question before us is not whether the overall strategy was effective, but just whether the failure to make this particular motion. I think that's correct. It's very specific. I will say, you know, I can't tell you why they chose the defense that they chose. But if you look at his 3850, he continues to put in there that his defense was he didn't do it at sentencing. He continued to insist that he didn't commit this robbery. So, you know, that is my my guess is that's the reason why that's the defense they pursued rather than presuming that the state couldn't prove this was a deadly weapon. If there are no further questions, I ask that you affirm. Thank you. Thank you. That's fair. Yes. Yes, Your Honor. And, you know, obviously, the defendant has written many things on a I know on a pro se basis. And I do agree that it appears that the the trial court in looking at the 3.850 believed that his argument was that the state had to show the firearm and because they didn't. That was an error or his trial for his trial counsel was ineffective for not doing a judgment of acquittal because a weapon had not been presented. However, in reading his pleadings, it does appear that he brings up the fact that it was a that the BB gun argument should have been made that the BB gun argument should have resulted in a judgment of acquittal. And I think trial counsel not the BB gun argument, but the the fact that there was a failure of proof by the government who had the burden to prove that it was a deadly weapon. That's correct, Your Honor, and that that evidence has to be it has to be competent. It has to be substantial. And there may be evidence in the trial record that there that there was a weapon because we have the the victim talking about a weapon and we have the police officer saying he thought he saw a weapon or that he saw a weapon, even though he was a distance away. But there was no evidence there appeared to be a weapon. That was the testimony. I mean, that was the answer to the question. That's correct. But after that testimony, there was still nothing in the record to show that it was a deadly weapon that it could inflict inflict great bodily harm. And even those two counsel, sorry, if the test, though, under Florida, under Florida law under Mitchell, is that both words and actions imply that the gun was loaded inoperable. If that is sufficient evidence, if we find that that was the state of Florida law at the time that this trial, then was there sufficient evidence given the testimony of the waitress and the officer outside? With regards to the waitress, Your Honor, I don't recall any testimony where it came out that the weapon could inflict great bodily harm. I know she was frightened. But beyond that, I mean, it could have been any type of weapon. It could have been an operable. She was she was frightened. The officer was a little sketchier in terms of saying that, as Judge Martin said, that he thought he saw a weapon. Those two things do not appear to be substantial competent evidence that it was a deadly weapon that could inflict great bodily harm. Can I ask one more question? Sure. I just want to I think I think we're all on the same page about how we need to the process we need to go through to solve this case. I just want to make sure that you're on the same page, too. What we need to do is we need to look at the evidence that the state presented. And we need to look at Florida law. And we need to decide whether there was a substantial likelihood that the judge would have granted a motion for judgment of acquittal had it been made. Is that the right framework for resolving the case? Yes, Your Honor, I believe that is the right framework. And I would just like to add that I think that properly crafted trial counsel could have obtained sufficient evidence to establish that it was a BB gun so that when the JOA was presented, it would have been successful. Thank you. That concludes the argument in this case. And I will call the next case of